Robert C. Switzer and Patricia D. Switzer v. Commissioner. Joseph L. Switzer and Elise deG. Switzer v. Commissioner.
Switzer v. Commissioner
Docket Nos. 46478, 46479.
United States Tax Court
T.C. Memo 1954-141; 1954 Tax Ct. Memo LEXIS 105; 13 T.C.M. (CCH) 840; T.C.M. (RIA) 54247; August 26, 1954, Filed *105 Held, amounts reported by petitioners as ordinary income from royalties were properly so reported rather than as long-term capital gains as now claimed by petitioners. John D. Steele, Esq., Union Commerce Building, Cleveland, Ohio, for the petitioners. John K. Lynch, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax for the calendar years 1949 and 1950 of $1,583.54 and $4,331.36, respectively, against petitioners Robert C. Switzer and Patricia D. Switzer in Docket No. 46478, and of $1,510.44 and $4,227.38, respectively, against petitioners Joseph L. Switzer and Elise deG. Switzer in Docket No. 46479. The petitioners do not contest the adjustments on which the deficiencies were determined, but in their petitions *106 ask that overpayments of tax be found, based on their mistaken reporting of certain royalty payments as ordinary income in the taxable years. They allege the payments should have been treated as long-term capital gains resulting from the sale of capital assets under section 117, Internal Revenue Code of 1939. The claimed overpayments are $9,603.10 for 1949 and $26,476.96 for 1950 in Docket No. 46478, and $9,190.44 for 1949 and $24,753.99 for 1950 in Docket No. 46479. Findings of Fact Most of the facts have been stipulated. As stipulated, these facts are found and the stipulation and attached exhibits are incorporated herein by reference. The stipulated facts are as follows: The petitioners Robert C. Switzer and Patricia D. Switzer, husband and wife, filed their joint returns for the calendar years 1949 and 1950 with the collector of internal revenue in Cleveland, Ohio, and paid income taxes for the year 1949 in the amount of $28,150.14, on or before January 10, 1950, and for the year 1950 in the amount of $56,346.46, on or before March 12, 1951. The petitioners Joseph L. Switzer and Elise deG. Switzer, husband and wife, filed their joint returns for the calendar years 1949 *107 and 1950 with the collector of internal revenue in Cleveland, Ohio, and paid income taxes for the year 1949 in the amount of $23,245.32, on or before January 14, 1950, and for the year 1950 in the amount of $50,673.79, on or about March 12, 1951. Petitioners Robert C. Switzer and Joseph L. Switzer are brothers and, prior to 1936, had spent considerable time in developing and perfecting inventions in the field of luminescence. On May 11, 1936, they entered into a written license agreement with the Continental Lithograph Corporation (hereafter referred to as Continental), of Cleveland, Ohio, providing for the licensing of numerous inventions in the field of luminescence. Thereafter, numerous United States patent applications were filed on various inventions of theirs and were utilized and practiced by Continental. Some of the patent applications and United States patents issued thereon included in the license agreement were sublicensed by Continental to other companies. The parties operated under the contract for about nine years, and royalties were paid to the Switzers by Continental, which in turn manufactured and sold many of the licensed articles and devices and employed licensed *108 processes in their manufacture. The licensed patents and applications enjoyed widespread commercial success. Differences of opinion arose between the parties, and following litigation and arbitration, the agreement was cancelled November 1, 1945. As a result of the cancellation, the parties entered into a settlement agreement dated November 1, 1945. As a part of the settlement on cancellation, the parties entered into a license agreement dated November 1, 1945. On February 20, 1942, Continental sublicensed Magnaflux Corporation, of Chicago, Illinois, under United States patents No. 2,259,400 and No. 2,267,9999, which had been licensed to Continental by petitioners Robert C. and Joseph L. Switzer. The general field of both sublicense agreements was luminescent flaw detection, materials, and methods. As part of the settlement agreement with Continental, following cancellation of the license agreement of May 11, 1936, Continental assigned to the Switzers all its rights and obligations under the two sublicense agreements with Magnaflux Corporation, and the assignments were ratified and supplemented by written agreements between Magnaflux Corporation and the Switzers on March 26, 1946. *109 On August 12, 1944, the Switzers licensed Guaranty Silk Dyeing and Finishing Co. Ltd., a Dominion corporation, of St. Catherines, Ontario, under certain Canadian patent applications in the field of luminescence. On August 20, 1945, the Switzers licensed Dominion Manufacturers Limited, a Dominion corporation, of St. Catherines, Ontario, under a certain Canadian patent covering luminescent embalming fluids and arterial embalming methods. Prior to November 1, 1945, Patricia and Elise each acquired by gift from her husband an undivided 1/8 interest in the subject patents, patent applications, and inventions in the field of luminescence, and an equivalent interest in the outstanding agreements. On November 1, 1945, the date of cancellation of the Continental license agreement, the petitioners owned, as tenants in common, undivided interests in the patents, patent applications, and inventions in the field of luminescence in the following proportions: Robert C. Switzer
3/8
Patricia D. Switzer
1/8
Joseph L. Switzer
3/8
Elise deG. Switzer
1/8
Immediately upon the cancellation and termination of the license agreement between petitioners and Continental, a partnership *110 of Robert C. Switzer and Joseph L. Switzer was formed and operated under a license agreement from the four petitioners dated November 1, 1945. Under this agreement, the partnership undertook to carry on the functions previously performed by Continental in manufacturing and selling various luminescent compositions, articles, and devices. The operation of the partnership and the previous experience of Continental demonstrated to Robert C. and Joseph L. Switzer that a profitable business could be developed by them for the manufacture and sale of the various articles, devices, and compositions. Accordingly, on July 1, 1946, an Ohio corporation, Switzer Brothers, Inc., was formed, in which the stock was held equally by the two former partners. Switzer Brothers, Inc. took over assets and assumed the liabilities of the predecessor partnership. On July 30, 1946, the four petitioners and Switzer Brothers, Inc. entered into a written agreement, effective July 1, 1946, called "License Agreement", wherein it was recited that petitioners granted to Switzer Brothers, Inc. an exclusive license to make, use and sell and to grant sublicenses to make, use and sell products, devices, and methods within *111 the scope of all patents, patent applications, inventions, trade secrets, and improvements in the field of luminescence, as were then owned by licensors, subject to outstanding licenses. Subsequent to the agreement of July 30, 1946, the four petitioners and Switzer Brothers, Inc. entered into three written agreements dealing with problems which arose in the conduct of the business of Switzer Brothers, Inc. under the agreement of July 30, 1946. On October 1, 1949, an agreement was executed between the parties dealing with the treatment, under the agreement, of commissions paid to Switzer Brothers, Inc. by dyers of daylight fluorescent textiles and confirming an earlier understanding as to litigation. On June 22, 1950, petitioners and Switzer Brothers, Inc. entered into a written agreement concerning the apparel licensing program by Switzer Brothers, Inc. under the trademark, "Day-Glo", and containing provisions with respect to the sharing of possible liability to Gantner and Mattern Company. On November 2, 1950, petitioners and Switzer Brothers, Inc. entered into a written agreement authorizing the payment to Gantner and Mattern Company of one half of certain identified royalties *112 from swimwear makers. On July 30, 1946, the patents, patent applications, and inventions covered by the agreement between the four petitioners and Switzer Brothers, Inc. of the same date fell into three categories: Category A, Canadian patents and patent applications licensed to Canadian companies; category B, patents and patent applications originally sublicensed by Continental to Magnaflux Corporation in the field of flaw detection; and category C, all the remaining patents, patent applications and inventions previously licensed to Continental. With respect to the patents and patent applications in category A, petitioners did not transfer or assign to Switzer Brothers, Inc. their interest in the outstanding Canadian license agreements and continued thereafter to receive directly from the Canadian licensees the royalties arising from such license agreements. Likewise, as to category B, petitioners did not transfer or assign the two license agreements with Magnaflux Corporation to Switzer Brothers, Inc., and continued thereafter to receive directly from Magnaflux the royalties arising from such license agreements. The royalties received from Magnaflux and from the two Canadian licensees *113 were reported by the petitioners as ordinary income from royalties in their income tax returns for 1949 and 1950. Switzer Brothers, Inc. immediately after the agreement of July 30, 1946, actively engaged in the business of manufacturing, promoting and selling luminescent devices, articles and compositions. In 1949 and 1950 Switzer Brothers, Inc. had built up a substantial business in such activities and, in addition, had sublicensed numerous third parties under certain of the patents and patent applications in category C. Switzer Brothers, Inc. was actively engaged in promoting, exploiting and developing said patents. In the calendar year 1949 Switzer Brothers, Inc. paid to Robert C. Switzer and Patricia D. Switzer, pursuant to the agreement of July 30, 1946, the sum of $3,610.33 with respect to sales of materials covered by the patents and patent applications in category B (Magnaflux); Swtizer Brothers, Inc. made no payments in the calendar year 1949 with respect to the patents and patent applications in category A (Canadian); and made payments pursuant to said agreement of July 30, 1946, with respect to the patents and patent applications in category C in the amount of $38,306.44. *114 Switzer Brothers, Inc., in the year 1949, made exactly the same payments in each category pursuant to the agreement of July 30, 1946, to petitioners Joseph L. Switzer and Elise deG. Switzer. The petitioners reported these payments as ordinary income from royalties received for the year 1949 on their federal income tax returns and paid the tax thereon. In the calendar year 1950 Switzer Brothers, Inc. paid to petitioners Robert C. Switzer and Patricia D. Switzer, pursuant to the agreement of July 30, 1946, the sum of $5,042.97 with respect to sales of materials covered by the patents and patent applications in category B (Magnaflux); Switzer Brothers, Inc. made no payments in the calendar year 1950 with respect to the patents and patent applications in category A (Canadian); and made payments pursuant to the agreement of July 30, 1946, with respect to the patents and patent applications in category C in the amount of $87,062.58. Switzer Brothers, Inc., in the year 1950, made exactly the same payments in each category pursuant to the agreement of July 30, 1946, to Joseph L. Switzer and Elise deG. Switzer. The petitioners reported these payments as ordinary income from royalties received *115 for the year 1950 on their federal income tax returns and paid the tax thereon. All of the patents and patent applications upon which the payments were made in the years 1949 and 1950 had been held by petitioners for more than six months prior to July 30, 1946. Petitioners Robert C. Switzer and Joseph L. Switzer had a previous history of licensing their patents and patent applications, and petitioners Patricia D. Switzer and Elise deG. Switzer had licensed their interest in patents and patent applications to the partnership of Switzer Brothers. Early in 1950 petitioners decided to make gifts in trust for the benefit of their children of certain patents and patent applications in category B, which were under license to Magnaflux Corporation, under the agreement dealing with the field of fluorescent magnetic testing. Petitioners desired to assign full and absolute rights of ownership to the trustee and, accordingly, executed on March 31, 1950, various instruments to accomplish the assignment. Petitioners assigned all their right, title and interest to the patents and patent applications covered by the license agreement with Magnaflux Corporation as well as all of their interest *116 in the license agreement to John D. Steele, as trustee, to which assignment Magnaflux Corporation consented. Petitioners executed 8 separate irrevocable trust agreements with John D. Steele, as trustee, for the benefit respectively of each of the children of the petitioners. In 5 of these trusts agreements petitioners Joseph L. Switzer and Elise deG. Switzer were grantors, and the beneficiaries were their 5 children. In 3 of these trust agreements petitioners Robert C. Switzer and Patricia D. Switzer were grantors, and the beneficiaries were their 3 children. To facilitate the assignment to John D. Steele, trustee, of the rights of petitioners to receive royalties from Switzer Brothers, Inc. for patents and patent applications in the field of fluorescent magnetic testing, a new license agreement between petitioners and Switzer Brothers, Inc. limited to the field of fluorescent magnetic testing was executed on March 31, 1950, and assigned to John D. Steele, Trustee. In addition to the stipulated facts we make the following findings: Prior to July 1946 none of the petitioners had ever sold or offered for sale any patents or patent applications. The petitioners were not engaged in the *117 business of selling patents. Switzer Brothers, Inc. in 1949 and 1950 conducted a vigorous campaign against infringers in the fields covered by the patents and patent applications in category C. In letters sent to infringers and potential infringers and paid advertisements in trade journals, Switzer Brothers, Inc. held itself out to the public as the owner of the patents in category C and threatened suit against infringers. In 1949, Switzer Brothers, Inc. sued in its own name 13 defendants in Texas for infringement of patents in category C. The action resulted in a judgment that the patents were valid and infringed and the defendants were enjoined against carrying on further infringement. In 1950, Switzer Brothers, Inc. sued Marshall Field of Chicago, a large retailer, for infringement of category C patents. The suit was filed in the name of the corporation and was settled on an amicable basis with Marshall Field recognizing the validity of the patent and discontinuing infringement. Opinion Petitioners contend that the agreement of July 30, 1946 amounted to an "assignment", rather than a license, of the patents described in our findings of fact as belonging in category C. *118 Their counsel's opening statement as well as their briefs expressly disclaim any such contention with reference to the patents in categories A and B and concede that the payments received with regard to patents in those categories were properly treated by the Commissioner on the basis as reported by petitioners, i.e., as royalty payments constituting ordinary income. The category C patents, however, according to petitioners' argument, are to be treated as having been assigned rather than merely licensed, regardless of the terminology of the July 30, 1946 agreement, on the basis that the "substance" of the transaction rather than its "form" should control, citing Halsey W. Taylor, 16 T.C. 376. We have carefully examined the stipulated facts and the testimony offered herein as well as what this Court said in the Taylor case, but do not agree with petitioners' conclusion so far as this case is concerned. In the Taylor case it is clear that language of the agreement involved provided for the "assignment" of patents and applications for patents which had theretofore been the subject of a "license" agreement. Here, we have no purported change in terminology. The agreement *119 which we have before us continued the "license" terminology which had been used in previous agreements between petitioners and their admitted licensees. The new agreement, by recitation, "exclusively licensed" the right "to make, use and sell and to grant sub-licenses to make, use and sell products, devices and methods within the scope of all patents, patent applications, inventions, trade secrets, and improvements in the field of luminescence as are now owned by "Licensors" (the petitioners herein). [Italics supplied.] This language is all inclusive. The agreement itself does not differentiate or even categorize the patents covered. The division of the patents into categories is contained in the stipulation of facts, presumably at the instance of petitioners and thus affords a basis for petitioners' argument. However, in our opinion, this does not call for a difference in treatment tax-wise of the payments made to petitioners as a result of the different patents. As stated above, the agreement of July 30, 1946 makes no differentiation between the various patents. It purports to license "all" patents owned by petitioners. Yet petitioners argue that the "A" and "B" patents were *120 not thereby "assigned" but the "C" patents were, simply because the A and B patents had previously been the subject of sublicenses and so petitioners could not have intended a full assignment. We can not follow petitioners' reasoning in this respect. As we interpret the July 30, 1946 agreement it, in essence, continued the former modus operandi between the patent owners (the petitioners) and Continental with reference to the so-called category C patents. Witness the "Whereas" clauses of the agreement: "WHEREAS, the Licensors own, as tenants in common, the entire right, title and interest in and to certain patents, patent applications, inventions, trade secrets, and license agreements relating to materials capable of luminescing, devices capable of exciting luminescence, and methods relating to or utilizing luminescence, all of which are hereinafter referred to as the 'field of luminescence', and "WHEREAS, Continental Lithograph Corporation of Cleveland, Ohio, was licensed in said field of luminescence under an agreement executed on May 11, 1936, ( said license agreement as initially executed being hereinafter referred to as the 'Continental contract'), and Licensors received *121 royalties and title to all developments under said Continental contract, and "WHEREAS, the said Continental contract has been terminated and Licensee is now licensed in Continental's stead by operation of mesne agreements within the aforesaid field of luminescence and is now performing substantially the same functions as did said Continental Lithograph Corporation and is subject to substantially similar obligations, and "WHEREAS, the parties hereto have adopted most of the original provisions of the Continental contract to define their present operations and are desirous of simplifying the said contract by restating or omitting unduly complex or obsolete provisions thereof, [Italics supplied]" Now, as we understand, petitioners make no contention that they had ever sold or assigned the patents in question to Continental, and we do not think they can here validly argue that they assigned the patents to Switzer Brothers, Inc., a corporation wholly owned by the Switzer brothers. To some extent this is also borne out by the subsequent conduct of petitioners in agreeing as to who should bear the costs of litigation regarding the patents and in whose name such litigation should *122 be conducted. It is also substantiated by the consistent reporting of income from the patents as ordinary income, both before and after the July 30, 1946 agreement, though we are cognizant of the fact that taxpayers are entitled to correct mistakes in tax reporting when the facts subsequently establish that mistakes had been made. On the basis of the whole record, we conclude that petitioners have failed to establish that they intended or accomplished a sale or transfer or assignment of their interest in the category C patents to Switzer Brothers, Inc. We think Switzer Brothers, Inc. simply stepped into the shoes of the former partnership as a licensee of petitioners and that the payments petitioners received from Switzer Brothers, Inc. were in fact royalties and were properly so reported on petitioners' income tax returns. Decisions will be entered for the respondent.